06-5600-cr(L)
U.S.A. v. Amato

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued May 15, 2008                    Decided August 21, 2008)

Docket Nos. 06-5600-cr(L), 06-5741-cr, 07-2152-cr, 07-2311-cr

_____

United States of America,

Appellee,

v.

Joseph Amato and John Fasciana,

Defendants-Appellants.

_____

Before:
                CARDAMONE, MINER, and POOLER,
                     Circuit Judges.

_____

     Defendants appeal judgments of the United States District
Court for the Southern District of New York (Swain, J.)
convicting them of mail and wire fraud and imposing, among other
things, a $12.8 million restitution order that included attorney
fees and accounting costs incurred by the corporate victim of the
fraud.

     Affirmed.

_____

JOSHUA L. DRATEL, New York, New York (Renita K. Thukral, Erik B.
     Levin, Aaron Mysliwiec, Law Office of Joshua L. Dratel,
     P.C., New York, New York, of counsel), for Defendant-
     Appellant Joseph Amato.

BRIAN C. WILLE, New York, New York (Usman Mohammad, Kostelanetz &
     Fink, LLP, New York, New York, of counsel), for Defendant-
     Appellant John Fasciana.

MARCUS A. ASNER, Assistant United States Attorney, New York, New York (Michael J. Garcia, United States Attorney, Katherine Polk Failla, Assistant United States Attorney, Southern District of New York, New York, New York, of counsel), <u>for Appellee</u>.

_____

CARDAMONE, Circuit Judge:

Defendants Joseph Amato and John Fasciana appeal from judgments of conviction entered December 5, 2006, and December 12, 2006, respectively (both amended May 22, 2007), in the United States District Court for the Southern District of New York (Swain, J.) following an 11-week jury trial. On this appeal we write primarily on the subject of restitution.

Three individuals -- a business executive, his lawyer, and an officer in the business from which the criminal activity in this case originated -- conspired together and perpetrated a series of frauds against several states and a corporation that had purchased the small company which employed the three individuals. Before trial the executive died. The lawyer -- Fasciana -- and the officer -- Amato -- were convicted for the frauds, and the trial court ordered them to make restitution.

Restitution is a complex subject because civil and criminal restitution are somewhat different. The civil rule is often stated under the rubric of unjust enrichment: "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." Restatement (First) of Restitution § 1 (1937). In the criminal law, victims' rights are generally the focus of restitution provisions, including those contained in the Mandatory Victims Restitution Act of 1996 (MVRA), Pub. L. No. 104-132, Title II, Subtitle A, 110 Stat. 1227, the criminal statute with which we deal on this appeal. Its purpose is primarily to restore the victim to his or her

prior state of well-being, and to that end to require federal "criminal defendants to pay full restitution to the identifiable victims of their crimes."  S. Rep. No. 104-179, at 12-13 (1995), as reprinted in 1996 U.S.C.C.A.N. 924, 925-26.

Under the MVRA, restitution must be ordered without consideration of the defendant's economic circumstances.  See 18 U.S.C. § 3664(f)(1)(A).  Consequently, while going down the road to committing a crime may be as easy as the "descent to Avernus," the payment of restitution under the MVRA can be as hard as the return to view "etherial light."[1]  The question we must address is not whether the defendants are capable of making this payment but merely whether the items included in the restitution order fall within the scope of the MVRA, as well as whether the order was otherwise properly calculated.

BACKGROUND

A.  Facts

FCI, Inc. (FCI), a small Manhattan consulting firm, was purchased in 1995 by Electronic Data Systems Corporation (EDS), headquartered in Plano, Texas, and became part of EDS's Global Securities Industry Group (GSIG).  At the time of the purchase,

---

[1]  In Virgil's Aeneid, the Cumaean Sibyl warns:

> The way is easie to the Avernian Flood,
> Black Pluto's Gates stand open Day and Night:
> But to return, and view Etherial Light,
> That is a work, a labour . . . .

The Works of Publius Virgilius Maro 324 (John Ogilby trans., 2d ed., London, Thomas Roycroft 1668) (translating Aeneid, bk. 6, II. 126-29).

Michael Reddy was FCI's Chief Executive Officer, John Fasciana was its legal counsel as well as Reddy's personal attorney, and Joseph Amato was a shareholder and officer of FCI. Each of these individuals assumed similar positions within GSIG after the purchase.

The purchase agreement included an incentive plan under which EDS would pay large bonuses to Reddy and other GSIG employees if GSIG met certain performance targets. These performance targets were linked to GSIG's work helping client banks and brokerage firms minimize their losses due to escheatment. The work entailed reviewing escheated funds, such as unclaimed dividends or interest payments, and assisting clients in reclaiming from states those funds that were not properly subject to escheatment. It also entailed reviewing accounts in which clients placed funds marked for escheatment before turning them over to states, and identifying those funds that could be removed from these accounts to avoid escheatment in the first place. This work was typically performed on a contingency fee basis, which meant that GSIG's compensation -- and thus its progress towards meeting its performance targets -- was tied to the amount of funds its clients were able to recover or save from escheatment.

GSIG never met its performance targets. But Reddy, Fasciana, Amato, and other FCI employees conspired to deceive EDS into believing it had so that EDS would pay out the incentive plan bonuses. They did this by: (1) urging clients to retain

4

pre-escheatment funds to which these clients had no right, (2) creating and submitting to various states fraudulent claims for the return of clients' escheated funds, (3) recording income from non-existent fees, (4) stealing EDS checks and laundering them through Fasciana's attorney trust accounts to make it look as though the checks were payments for GSIG's work, and (5) misleading EDS auditors in an attempt to conceal all of this fraudulent activity.

### B. Criminal Charges Against Defendants

As a result of this criminal activity the defendants were charged as follows: Count One of a 13-count superseding indictment filed on December 4, 2001 charged Amato, Fasciana, and Reddy with conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 371. Count Two charged Fasciana and Reddy, and Count Three charged Fasciana, Amato, and Reddy, with the substantive offense of mail fraud, in violation of 18 U.S.C. §§ 1341, 1346, and 2. Count Four charged Fasciana, Amato, and Reddy, and Counts Five through 13 charged Fasciana and Reddy, with additional substantive mail and wire fraud offenses, in violation of 18 U.S.C. §§ 1341, 1343, 1346, and 2.

Reddy died before trial. Amato and Fasciana's first trial in 2002 ended with a hung jury. Following that first trial, Judge Swain granted Fasciana's motion for acquittal on Count Two of the indictment. Trial on the remaining 12 counts commenced on April 25, 2005 and ended on July 7, 2005, when the jury convicted both defendants on all counts remaining against them.

5

## C. Sentences

On November 20, 2006 Judge Swain sentenced Fasciana to 48 months of imprisonment, followed by three years of supervised release, and a mandatory special assessment of $1,100. Judge Swain sentenced Amato on November 21, 2006 to a term of imprisonment of one year and one day, followed by three years of supervised release, and a mandatory $300 special assessment. On May 18, 2007 Judge Swain held a restitution hearing, at which time she ordered the defendants to pay restitution of $12,799,795 to EDS as the victim of the offenses. This figure included $3,088,466 in attorney fees and accounting costs that the district court found EDS to have incurred as a result of its participation in the investigation and prosecution of defendants' offenses. From their convictions and sentences both defendants appeal.

## DISCUSSION

On their consolidated appeal, Amato and Fasciana's strongest challenge is to the district court's restitution order. That is the principal subject of this opinion, and we address it in Part I below. Defendants also raise additional issues that we dispose of in Part II. Those issues are, principally: whether the district court erred by (1) refusing to grant a new trial based on the government's alleged withholding of impeachment material and newly discovered exculpatory evidence, (2) refusing to sever Amato's trial from Fasciana's, (3) improperly instructing the jury as to the meaning of "false statements" and "fraudulent

6

omissions," (4) preventing the defense from fully cross-examining prosecution witnesses, or (5) allowing the prosecution to display photographs of the conspirators during closing arguments, and (6) whether these purported errors require reversal when considered cumulatively.

We turn first to the restitution issue.

## I    Restitution

Defendants primarily challenge the $3,088,466 of EDS's attorney fees and accounting costs included in the restitution order.  They argue such expenses are not authorized under the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A, and, even if they are, the expenses were not sufficiently documented to support the restitution ordered in this case.  These arguments implicate the district court's conclusions of law, which we review de novo, as well as its findings of fact, which we review for clear error.  See United States v. Boccagna, 450 F.3d 107, 113 (2d Cir. 2006).  Overall, we review the district court's restitution order deferentially, reversing only if in our view the trial court abused its discretion.  See id.

## A.    The MVRA in Context

When Congress enacted the MVRA, it was adding to a statutory sentencing structure in which restitution had only recently begun to play a prominent role.  See S. Rep. No. 104-179, at 12-14, 1996 U.S.C.C.A.N. at 925-27.  Restitution has deep roots in the common law, but it was not until the Victim and Witness Protection Act of 1982 (VWPA), Pub. L. No. 97-291, 96 Stat. 1248

(1982), that Congress first gave the federal district courts general statutory authority to order restitution as part of a criminal sentence outside of the probation context. See S. Rep. No. 97-532, at 30 (1982), as reprinted in 1982 U.S.C.C.A.N. 2515, 2536; see also United States v. Brown, 744 F.2d 905, 910 (2d Cir. 1984) (discussing restitution's common law roots).

The exercise of this authority under the VWPA is discretionary, and the act lists the particular types of restitution that may be considered. See VWPA § 5, 96 Stat. at 1253-55 (currently codified, as amended, at 18 U.S.C. § 3663). In 1994 Congress added to the list 18 U.S.C. § 3663(b)(4), which provides that restitution orders may be used to "reimburse the victim for lost income and necessary child care, transportation, and other expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." Violence Against Women Act of 1994, Pub. L. No. 103-322, Title IV, § 40504, 108 Stat. 1796, 1947 (1994).

The MVRA built on this structure by making restitution a mandatory part of the sentences imposed for certain categories of offenses. See MVRA § 202, 110 Stat. at 1227 (codified at 18 U.S.C. § 3556). The VWPA's discretionary restitution provisions (as amended over the years) remain in 18 U.S.C. § 3663, but the MVRA added, among other things, a set of mandatory provisions in 18 U.S.C. § 3663A. See MVRA § 204, 110 Stat. at 1227-29. One of these mandatory provisions, 18 U.S.C. § 3663A(b)(4), parallels

8

nearly verbatim the discretionary provision quoted above. It requires district courts to "reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4).

B. Legal Fees and Accounting Costs Under the MVRA

It is undisputed that § 3663A(b)(4) applies to the fraud offenses committed by the defendants in the present case. See 18 U.S.C. § 3663A(c)(1)(A)(ii). The district court relied on this provision to include in its restitution order as "other expenses" certain attorney fees and accounting costs the court found EDS to have incurred during its participation in the investigation and prosecution of the defendants' fraud.

Defendants' first contention is that the term "other expenses" in § 3663A(b)(4), as a matter of law, cannot be read to include attorney fees and accounting costs. This question is one of first impression in our Circuit. We hold that "other expenses" incurred during the victim's participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense may include attorney fees and accounting costs. Accord United States v. Gordon, 393 F.3d 1044, 1057 (9th Cir. 2004); cf. United States v. Phillips, 477 F.3d 215, 224-25 (5th Cir. 2007) (allowing restitution of costs incurred by victim university in conducting computer damage and

systems evaluation and contacting individuals whose information had been stolen as a result of defendant's computer hacking).

Our conclusion follows from the plain language of the statute. That language gives the district courts broad authority to determine which of the victim's expenses may be appropriately included in a restitution order. See Gordon, 393 F.3d at 1056-57. The statute requires that the included expenses be "necessary," and that they be "incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4). It also requires, as discussed further below, that these expenses be incurred by a "victim" within the meaning of 18 U.S.C. § 3663A(a)(2) and that they not require unduly complicated determinations of fact, see 18 U.S.C. § 3663A(c)(3). The statute does not otherwise limit the type of expenses that may be included.

C. Defendants' Arguments Against Including Attorney Fees and Accounting Costs in Restitution Order

1. Ejusdem Generis

Defendants invoke the principle of ejusdem generis in urging us to exclude attorney fees and accounting costs from the definition of "other expenses" under § 3663A(b)(4). They maintain the term "other expenses" should be read to include only those expenses similar in nature to the ones specifically listed in this provision: lost income, child care expenses, and travel expenses.

10

Ejusdem generis is a canon of statutory construction that dates back in Anglo-American law at least as far as the Archbishop of Canterbury's Case, 76 Eng. Rep. 519, 520-21 (K.B. 1596). It literally means "of the same kind or class." Black's Law Dictionary 535 (7th ed. 1999). Under this canon, general terms that follow specific ones are interpreted to embrace only objects of the same kind or class as the specific ones. See, e.g., Hall St. Assocs. v. Mattel, Inc., 128 S. Ct. 1396, 1404 (2008); Wash. State Dep't of Soc. and Health Servs. v. Guardianship Estate of Keffeler, 537 U.S. 371, 384-85 (2003).

Ejusdem generis has its limits. Like other canons of statutory construction, it is simply a helpful guide to legislative intent, not a dispositive one, and it does not require a court to give it unthinking reliance. See Ali v. Fed. Bureau of Prisons, 128 S. Ct. 831, 839-40 (2008). Moreover, it has long been recognized that ejusdem generis cannot be called into play when the specific terms preceding the general one do not themselves have a common attribute from which a "kind or class" may be defined. See Darius v. Apostolos, 190 P. 510, 511 (Colo. 1920); State v. Eckhardt, 133 S.W. 321, 322 (Mo. 1910). In Ali v. Federal Bureau of Prisons, the Supreme Court relied on this reasoning, in part, to reject ejusdem generis as a guide for interpreting the meaning of "any other law enforcement officer" in 28 U.S.C. § 2680. See 128 S. Ct. at 839. While that general term is preceded in § 2680 by the phrase "officer of customs or excise," the Supreme Court found no relevant common attribute

11

linking customs officers to excise officers. Id. In other words, the specific terms did not define any generis within which the meaning of the general term could be circumscribed.

Similarly, we find no relevant common attribute linking lost income, child care expenses, and transportation expenses in 18 U.S.C. § 3663A(b)(4). Certainly, these are all expenses that one might conceivably incur while participating in an investigation or prosecution or attending proceedings. But we do not need ejusdem generis to limit "other expenses" to such activities since § 3663A(b)(4) already does so expressly.

It is true that our interpretation of the statute renders Congress' reference to child care and transportation expenses somewhat superfluous. But the Supreme Court confronted the same dilemma in Ali and did not find it to be a sufficient reason, standing alone, to invoke ejusdem generis. See 128 S. Ct. at 840. The Court reasoned that Congress might sometimes use specific terms not to limit the succeeding general ones, but instead simply to remove any doubt that the specific terms are included under the statute. Id. This reasoning is especially appropriate to § 3663A(b)(4), the drafters of which may have feared that courts would overlook child care and transportation expenses unless these items were specifically named. Such fears would not likely have extended to attorney fees and accounting costs because these expenses are so obviously associated with investigation and prosecution, particularly in the case of fraud offenses.

12

## 2. Causation

Defendants maintain in addition that "other expenses" cannot encompass attorney fees and accounting costs because such expenses amount only to indirect or consequential damages, whereas restitution is limited to direct harm. To support this assertion, defendants point to a number of cases in other circuits in which courts have rejected the inclusion of attorney fees in restitution orders on this basis: United States v. Radziszewski, 474 F.3d 480, 487 n.3 (7th Cir. 2007) (as amended), Government of Virgin Islands v. Davis, 43 F.3d 41, 46 (3d Cir. 1994), United States v. Mullins, 971 F.2d 1138, 1146-47 (4th Cir. 1992), and United States v. Arvanitis, 902 F.2d 489, 497 (7th Cir. 1990).

But none of these cases clearly address the language of § 3663A(b)(4). Davis, Mullins, and Arvanitis were all decided pre-MVRA when the courts were interpreting the language of the VWPA codified at 18 U.S.C. § 3663(b)(1). That language deals with the restitution of lost or damaged property, not investigation or prosecution expenses. Whether or not attorney fees or auditing costs may be included in the calculation of lost or damaged property says nothing about whether they may be included in the calculation of expenses incurred during investigation or prosecution of an offense.

It is not entirely clear whether the Seventh Circuit in Radziszewski was addressing restitution of property or of investigation and prosecution expenses. The cases cited in that

13

opinion suggest the former. In any event, to the extent the Seventh Circuit held that attorney fees and auditing costs may not be included in a restitution order under § 3663A(b)(4), we respectfully disagree. We also observe the Seventh Circuit has allowed the inclusion of auditing costs in a restitution order under 18 U.S.C. § 3663A(b)(1) on the theory that such expenses constituted damage to the victim's property. See United States v. Scott, 405 F.3d 615, 620 (7th Cir. 2005).

This is not to say defendants' concern over the link between an offense and the resulting restitution award may be ignored. As we have said, attorney fees and accounting costs may be included under § 3663A(b)(4) only if they were "necessary" and "incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." Further, a restitution award under the MVRA may be based only on victims who were "directly and proximately harmed as a result of the commission" of the offense, 18 U.S.C. § 3663A(a)(2), and restitution may not be imposed if the determination of complex issues of fact relating to causation would unduly complicate or prolong the sentencing process, 18 U.S.C. § 3663A(c)(3)(B).

In allowing the inclusion of attorney fees and accounting costs under § 3663A(b)(4), the Ninth Circuit has specified that such expenses must be the "direct and foreseeable result" of the defendant's wrongful conduct. Gordon, 393 F.3d at 1057. We have noted similar causation requirements in our analysis of victims'

14

losses generally under the MVRA but have not yet fully addressed these requirements. See United States v. Reifler, 446 F.3d 65, 135-39 (2d Cir. 2006); see also Boccagna, 450 F.3d at 120-21.

We question whether the Ninth Circuit's formulation is appropriate when analyzing investigation and prosecution expenses under § 3663A(b)(4). Subsection (b)(4) seems to focus more on the link between these expenses and the victim's participation in the investigation and prosecution than on the offense itself. Recently we upheld the inclusion of lost income under § 3663A(b)(4) without considering whether this loss was a direct and foreseeable result of the defendant's offense. See United States v. Douglas, 525 F.3d 225, 254 (2d Cir. 2008). And the Fifth Circuit has upheld investigation expenses based, in part, on its conclusion that the preclusion of "consequential damages" from other types of restitution does not apply to § 3663A(b)(4). See Phillips, 477 F.3d at 224-25.

We need not formulate a precise test in the present case because -- even assuming attorney fees and auditing costs must be a direct and foreseeable result of the offense -- such a requirement was clearly met here. Defendants perpetrated a complicated fraud against a large corporation and a number of its clients, as well as the states to which those clients were required to turn over escheated funds. That this fraud would force the corporation to expend large sums of money on its own internal investigation as well as its participation in the government's investigation and prosecution of defendants'

15

offenses is not surprising. There is no doubt that EDS's attorney fees and auditing costs were a direct and foreseeable result of defendants' offenses.

### D. The District Court's Findings

Nor are we persuaded that the district court erred in finding these expenses were sufficiently documented. EDS's claimed attorney fees and accounting costs were supported by a declaration made under penalty of perjury by a member of the law firm EDS retained to provide legal advice once it uncovered evidence of defendants' fraud. The memorandum lays out the work done by the law firm and by the forensic accounting firms hired to carry out various audits involved in EDS's resulting investigation. The memorandum relates how the law firm assisted EDS in completing its internal investigation of the fraud and then reporting the fraud to the government. It goes on to explain how the law firm represented EDS at meetings with the government and assisted in gathering and producing evidence necessary to the government's prosecution, as well as responding to document requests made by the defendants. It also explains how the law firm worked with the EDS clients and the states impacted by defendants' escheatment fraud and brought in the forensic accounting firms to perform the analysis necessary to uncover the extent of this fraud and ensure that the clients and states were made whole. This memorandum is supported by 228 pages of invoices and other documents detailing the costs involved. Viewing this evidence as a whole, we see no clear

16

error in the district court's determination that EDS expended $3,088,466 on its attorney fees and accounting costs.

### E. Amato's Additional Restitution Arguments

Amato also contends the district court erred by including in its restitution order certain losses not attributable to him and imposing a total restitution amount that is out of line with the amounts imposed on his co-conspirators. These contentions both hinge on a view of Amato's role in the conspiracy that is at odds with the district court's findings. There is no error in the district court's finding that the evidence established Amato's participation in each of the aspects of the conspiracy he now challenges. As the court explained, even where he was not a contemporaneous participant, he later engaged in cover-up activities. Moreover, it was well within the district court's discretion to make Amato jointly and severally liable for the entire loss EDS suffered as a result of the conspiracy even while apportioning the liability of some of his co-conspirators. See United States v. Nucci, 364 F.3d 419, 422 (2d Cir. 2004).

### II  Other Issues

Apart from the restitution issue, each of the defendants raise additional arguments. These arguments are all squarely controlled by existing precedent, and none of them have merit. We address them briefly below.

### 1. New Trial Motion

Amato avers he should have been granted a new trial because the government withheld evidence that could have been used to

17

impeach one of its witnesses and because new exculpatory evidence came to light after the trial.

It is well-settled that the government must turn over evidence in its possession which is both favorable to the defendant and material to his guilt, Pennsylvania v. Ritchie, 480 U.S. 39, 57 (1987), including information that could be used to impeach government witnesses. See Giglio v. United States, 405 U.S. 150, 154-55 (1972). While a new trial may be required when the government fails to do so, it is required only when the district court finds, among other things, a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed. See United States v. Madori, 419 F.3d 159, 169 (2d Cir. 2005). A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. We give great weight to the district court's factual findings in this regard, while reviewing the overall issue de novo. Id.

Here the only non-disclosed evidence to which Amato points is a statement of one of the government witnesses that he did not "recall" whether he had written a fraudulent invoice prior to November 1996. This alleged lack of recollection, Amato maintains, stood in contrast to the government's representation that the witness did not "know" anything about this invoice. While the recall statement might have been used to some extent to impeach this witness's testimony, it would have been, at best, a very minor issue at trial. Amato asserts the government's case

18

hinged on there being no fraudulent activity prior to November 1996, but this assertion is not supported by the record. Consequently, the probability of the non-disclosed statement affecting the jury's decision is insufficient to undermine our confidence in the outcome of Amato's trial.

Similarly, we are unpersuaded by Amato's proffered new evidence. District courts have discretion to grant a new trial based on newly discovered evidence if, among other things, the evidence is so material and non-cumulative that its admission would probably lead to an acquittal. See United States v. Parkes, 497 F.3d 220, 233 (2d Cir. 2007). We cannot conclude the district court abused its discretion in denying Amato's motion for a new trial because the new evidence merely suggests the existence of fraudulent activity prior to November 1996. We do not think this sufficient to have undermined the government's case.

## 2. Severance Motion

Amato next declares the district court erred in refusing to sever his trial from Fasciana's. To overturn this decision we would need to find an abuse of discretion so prejudicial to Amato as to constitute a miscarriage of justice. See United States v. Yousef, 327 F.3d 56, 150 (2d Cir. 2003). To the contrary, we think the trial court acted well within its discretion in holding a joint trial while reducing the risk of prejudice through limiting instructions. See Zafiro v. United States, 506 U.S. 534, 539 (1993). This is particularly so because much of the

19

evidence in this case could have been introduced against Amato even had he been tried alone, since it was probative of the extent to which he was involved in the conspiracy.

### 3. Jury Instructions

Fasciana declares the district court improperly instructed the jury as to the meaning of "false statements" and "fraudulent omissions" under the mail and wire fraud statutes. We review jury instructions de novo, and reverse only when the charge, viewed as a whole, constitutes prejudicial error. See United States v. Tropeano, 252 F.3d 653, 657-58 (2d Cir. 2001). Fasciana is unable to show that in this case.

His challenge fails, first, because it distorts the instructions actually given to the jury. For example, Fasciana suggests the jury was instructed that a "false statement" for mail and wire fraud purposes is one that the defendant had "no reasonable basis for believing." In fact, the district court instructed the jury that a statement about a future prediction is false if the defendant "either knew that the prediction would not come true or knew that he had no reasonable basis for believing that the prediction would come true." Moreover, this was part of a much longer passage of the judge's charge that began with an explanation: "[T]o satisfy the first element of mail fraud, the government must prove that the scheme to defraud involved the intent to deprive EDS of money or property."

The second problem with Fasciana's point is that it misapprehends the law by suggesting the only way in which

20

omissions can constitute mail fraud is under the "honest services" theory, a theory on which he was not indicted. He comes to this proposition based on a misreading of <u>McNally v. United States</u>, 483 U.S. 350 (1987), which he maintains displaced all omissions-based fraud theories. In fact, <u>McNally</u> hinged not on the question of omissions versus misrepresentations, but on the question of what was being deprived. See <u>id</u>. at 356-61. In <u>McNally</u>, the Supreme Court held that wire fraud does not include deprivations of intangible rights like honest services, but instead includes only deprivations of money or property. See <u>id</u>. Congress subsequently enacted 18 U.S.C. § 1346 to criminalize fraudulent deprivations of the intangible right to honest services. There is nothing in this turn of events to suggest that only omissions leading to a deprivation of honest services may constitute mail fraud. That would turn <u>McNally</u> on its head.

#### 4. Cross-Examination of Witnesses

Fasciana next complains he was improperly prevented from fully cross-examining two of the witnesses against him. In one of the alleged instances, the district court simply held he could not use cross-examination to inform the jury about the prior mistrial or about the identity of the government attorneys involved in the witness's cooperation agreement. In the other, the court restricted questioning about the witness's solicitation of prostitutes and his discussions with his wife about marital infidelity -- events that had occurred long in the past -- while still allowing questions about more recent adultery and false tax

21

returns. In both cases, the district court acted well within its discretion after weighing the risk of prejudice against the probative value of the testimony. See Fed. R. Evid. 403; United States v. Crowley, 318 F.3d 401, 417 (2d Cir. 2003).

### 5. Photographic Line-up

Fasciana also asserts the district court improperly allowed the government, during its summation, to display for the jury photographs of Fasciana and his co-conspirators that it had prohibited the government from displaying during trial. This was not, as Fasciana suggests, a photographic line-up, nor was there any inconsistency in the court's rulings as to when the photographs could be displayed. Instead, the court acted reasonably here in exercising its discretion while ruling on these evidentiary questions. See, e.g., United States v. Taubman, 297 F.3d 161, 164 (2d Cir. 2002).

### 6. Cumulative Effect and Remaining Arguments

Finally, just as we find no merit to any of Fasciana's arguments above, we also find no merit to his contention that reversal is required based on the cumulative effect of the purported errors. We have considered all of the defendants' remaining arguments and find them to lack merit as well.

### CONCLUSION

Accordingly, for the foregoing reasons, we affirm the district court's judgments of conviction and the sentences it imposed on each defendant. We also affirm the district court's restitution order.

Judgments affirmed.

22