13-2042-cr
United States v. Anthony Cuti

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2013

(Argued: March 12, 2014          Decided: September 11, 2014
Amended: February 6, 2015)

Docket No. 13-2042-cr

_____

UNITED STATES OF AMERICA,

*Appellee*,
v.

ANTHONY CUTI,

*Defendant-Appellant*.\*

_____

Before: JACOBS and POOLER, *Circuit Judges*, and ROMÁN, *District Judge*.\*\*

Appeal from a final order of restitution entered on May 13, 2013 in the

_____

\* The Clerk of Court is directed to amend the case caption as indicated above.

\*\* The Honorable Nelson S. Román, United States District Judge for the Southern District of New York, sitting by designation.

United States District Court for the Southern District of New York (Deborah

A. Batts, *J.*) pursuant to the Victims and Witnesses Protection Act ("VWPA"),

18 U.S.C. § 3663. We vacate the district court's order and remand for the sole

purpose of considering the restitution order in light of our further

clarifications about what expenses are properly deemed "necessary" under

the VWPA and extension of the reasoning in *United States v. Maynard*, 743 F.3d

374 (2d Cir. 2014). We affirm in all other respects.

_____

> BRIAN C. BROOK, Clinton Brook & Peed (Matthew
> J. Peed, *on the brief*), New York, N.Y., *for Defendant-*
> *Appellant*.
>
> JUSTIN ANDERSON, Assistant United States
> Attorney (Preet Bharara, United States Attorney for
> the Southern District of New York; Rebecca M.
> Ricigliano, Michael C. Gerber, Assistant United
> States Attorneys, *on the brief*), New York, N.Y., *for*
> *Appellee*.

POOLER, *Circuit Judge*:

Following a jury trial, Anthony Cuti was convicted on June 8, 2010 of

one count of conspiracy to make false statements and four counts of securities

fraud and was sentenced on August 22, 2011 to concurrent terms of thirty-six

months of imprisonment, to be followed by concurrent terms of three years of supervised release. In this appeal, Cuti challenges: (1) whether the district court's decision to award restitution, directly following its denial of Cuti's motion for a new trial and after initially declining to award restitution, evinced judicial vindictiveness in violation of his due process rights; and (2) whether the district court's award of restitution constituted an abuse of discretion.

As set forth below, we clarify whether particular expenses incurred are "necessary" under the VWPA and extend the reasoning of our recent decision in *United States v. Maynard*, a case construing the Mandatory Victims Restitution Act ("MVRA"), to cases under the VWPA.  In short, we conclude that the restitution order improperly includes legal expenses incurred in connection with a civil arbitration that, while connected to the offense of conviction, was not undertaken or pursued in aid of the prosecution.  We also clarify that non-victims are eligible for restitution only to the extent such payments were made on behalf of the victim.  We therefore vacate the district court's order of restitution for this limited  purpose, and otherwise affirm the remainder of the court's restitution order.

# BACKGROUND

## I.    Underlying Criminal Proceedings

Anthony Cuti was the Chief Executive Officer ("CEO"), and board chairman of Duane Reade until 2005.  The evidence introduced at Cuti's criminal trial showed that from 2000 to 2004, Cuti and his co-defendant William Tennant, Duane Reade's former Chief Financial Officer ("CFO") and senior vice-president, executed two different fraudulent accounting schemes in order to inflate the company's reported earnings.

Following trial, the  jury returned a verdict finding Cuti guilty on all counts: conspiracy under 18 U.S.C. § 371 (Count 1); and securities fraud in violation of 15 U.S.C. §§ 78j(b) & 78ff, 17 C.F.R. § 240.10b–5 and 18 U.S.C. § 2 (Count 2); making false statements in two SEC filings in violation of 15 U.S.C. §§ 78m(a) & 78ff, 17 C.F.R. § 240.13a–1 and 18 U.S.C. § 2 (Counts 3 and 4); and making false statements in another SEC filing in violation of 15 U.S.C. §§ 78o(d) & 78ff, 17 C.F.R. §§ 240.15d–1 & d–13, and 18 U.S.C. § 2 (Count 5). Tennant was acquitted on Count 1 and convicted on Count 2.  The district court denied both defendants' motions for a new trial and sentenced Cuti and

Tennant principally to imprisonment for three years and time served, respectively, and imposed fines of $5 million on Cuti and $10,000 on Tennant. Cuti and Tennant's convictions were upheld in June 2013. *See generally United States v. Cuti*, 720 F.3d 453 (2d Cir. 2013); *United States v. Cuti*, 528 F. App'x 84 (2d Cir. 2013).

## II.    **Duane Reade's Internal Investigations**

Oak Hill, a private equity firm, acquired Duane Read in 2004, and in 2005 terminated Cuti's employment without cause. Duane Reade and Cuti were unable to resolve certain disagreements regarding post-termination benefits for Cuti, and he filed an arbitration demand against Duane Reade on September 1, 2006. The law firm Paul, Weiss, Rifkind, Wharton & Garrison, LLP ("Paul, Weiss"), which has represented Oak Hill since 1978, was retained to represent Duane Reade in the arbitration.

In late August 2006, one week before Cuti initiated the arbitration, Duane Reade's general counsel Michelle Bergman was notified by Duane Reade's former Director of Construction about several suspicious "credit and rebilling" transactions made at Cuti's instruction that improperly classified several million dollars as capital expenditures. Bergman notified Paul, Weiss;

5

and the Audit Committee of Duane Reade's board of directors retained Cooley Godward Kronish LLP ("Cooley") as independent counsel, along with forensic accounting firm AlixPartners LLP, to conduct an internal investigation. On November 22, 2006, Paul, Weiss filed counterclaims in the arbitration based on this credit rebilling fraud. Cuti refused to be interviewed by Cooley unless Duane Reade withdrew certain of these arbitration-related counterclaims. No interview with Cuti was conducted, and on December 13, 2006, Cooley issued a report to Duane Reade's Audit Committee on this credit rebilling scheme.

In February 2007, Paul, Weiss uncovered evidence of a real estate income concession transaction (identified as the "Blue Trophy" transaction) involving Cuti that looked suspicious. Once again, Cooley and AlixPartners were retained by the Audit Committee to investigate. In a report to the Audit Committee dated May 18, 2007, Cooley concluded that between 2000 and 2005 "Cuti engaged in a fraudulent scheme designed to result in upfront recognition of real estate concession income to improve Duane Reade's earnings." App'x at 424 (quotation marks omitted). Cooley also explained that:

The impetus for the investigation was information learned by attorneys at [Paul, Weiss], Duane Reade's outside counsel, in the course of their preparation for the arbitration commenced against Duane Reade by its former CEO, Anthony Cuti. The information was communicated by Paul[,] Weiss attorneys . . . and related to a specific income item recognized by Duane Reade in the Second Quarter of 2001. Paul[,] Weiss attorneys shared that information with members of the Audit Committee, and the Audit Committee determined that further investigation into items classified as real estate concession income during the period 2000-2006 was warranted.

App'x at 312.

The results of these internal investigations led to the filing of amended counterclaims and affirmative defenses in the arbitration proceedings in April 2007, which the Arbitrator accepted on May 17, 2007. A few days later, on May 22, 2007, Duane Reade's counsel met with representatives of the U.S. Attorney's Office ("USAO") for the Southern District of New York and with the regional office of the SEC to disclose the internal investigations and their findings.

The government commenced its own investigation into Duane Reade's finances. Duane Reade cooperated in the USAO investigation, attending meetings with the prosecutors, participating in telephone calls, and responding to numerous requests for documents and information. In July

2007, the arbitration proceeding was stayed at the request of the government. Many Duane Reade employees, both former and current, were interviewed as part of the government's investigation. Duane Reade provided independent counsel for each, pursuant to each employee's individual contract, Duane Reade's bylaws, or its certificate of incorporation.

Throughout this time, Oak Hill and Duane Reade agreed to share the costs of legal representation by Paul, Weiss, with Oak Hill paying 65% percent and Duane Reade paying 35% of the fees from January 2007 through September 2008. Ultimately, the government investigation led to an indictment being returned against Cuti on October 9, 2008, charging Cuti in five counts. The SEC also filed a parallel civil action against Cuti arising out of the same conduct.

## III.    Post-Verdict Proceedings in the District Court

Cuti was found guilty on all counts on June 8, 2010. In October 2010, Oak Hill and Duane Reade submitted a joint impact statement seeking an order of restitution of approximately $53 million—with the majority of the amount requested to compensate for the amount that Oak Hill claimed that it overpaid for its acquisition of Duane Reade as a result of Cuti's fraud. So that

the government could present its theory of loss and restitution, the district court held a *Fatico* hearing over seven days from November 2010 to June 2011.

On July 28, 2011, Cuti moved for a new trial, premised on newly acquired evidence that one of the government witnesses had given perjured testimony at trial. The following day, the district court issued an order and memorandum addressing Oak Hill and Duane Reade's requests for restitution. *United States v. Cuti*, No. 08 C.R. 972(DAB), 2011 WL 3585988 (S.D.N.Y. July 29, 2011) ("*Initial Restitution Order*"). The court concluded that Oak Hill was not entitled to restitution in the amount of Oak Hill's alleged overpayment for Duane Reade because the Government had not met its burden of showing that Oak Hill suffered a loss attributable to Cuti's offense conduct. *Id.* at *3-6. Next, though the court acknowledged that it "*could*" order discretionary restitution under the VWPA, *id.* at *7 n.10, it declined to order it, on account of "complex issues of fact as to the amount of restitution that would unduly complicate and prolong the sentencing process"—i.e., "the determination of just what are the types of costs Oak Hill and Duane Reade have incurred." *Id.* at *7. While it was "clear that Oak Hill and Duane Reade have expended staggering amounts of money, time, and effort in the

9

investigation and prosecution of Defendant Cuti's Title 18 offense," the court expressed concern that "some arbitration-related costs . . . could be imbedded in the restitution calculations," and that "the net reimbursement of all costs . . . can best be addressed in the context of Oak Hill, Duane Reade and Defendant Cuti's arbitration proceedings." *Id.* The *Initial Restitution Order* did not address Cuti's recently-filed motion for a new trial. Sentencing was scheduled for August 22, 2011.

On August 12, 2011, Duane Reade and Oak Hill asked the court to reconsider its position regarding restitution, a request which the court summarily denied on August 16, 2011. However, on August 19, the court issued a subsequent order vacating its declination of Oak Hill and Duane Reade's request for reconsideration. It also vacated its *Initial Restitution Order*. The court's order indicated that it would "impose restitution and retain jurisdiction for the purpose of determining the appropriate amount" at Defendant Cuti's sentencing. App'x at 21. The court also directed Cuti to respond to Oak Hill's August 12, 2011 letter. That same day, the court also denied Cuti's motion for a new trial. Cuti was sentenced as scheduled on August 22, 2011.

A partial restitution order, issued October 14, 2011, ruled "that expenses attributable to the non-criminal proceedings are not appropriate for restitution," and that "Oak Hill, separate and apart from issues relating to Duane Reade, is not a victim to whom restitution is owed based on the Court's finding that the Government failed to establish a loss." Special App'x at 2. The court also concluded that "Oak Hill in its capacity as successor to Duane Reade is compensable." Special App'x at 2. The court determined that certain fees and expenses for Cooley and AlixPartners were subject to restitution, as were certain fees and expenses of Duane Reade's accountants and auditors, as well as costs of the "Kroll Ontrack database." Special App'x at 2. The court then referred the remaining fees and expenses for an inquest before Magistrate Judge Pitman. Special App'x at 2-3.

Following the magistrate judge's December 21, 2012 Report and Recommendation ("R&R"), the court conducted a de novo review and adopted the R&R with some modifications. *United States v. Cuti*, No. 08 C.R. 972(DAB), 2013 WL 1953741 (S.D.N.Y. May 13, 2013) ("*Cuti Restitution Order*"). The court determined that restitution was only available pursuant to the VWPA, not the MVRA, and that Oak Hill was entitled to restitution not as a

11

"victim," but only as a "non-victim" that had been required to make payments to Duane Reade, the actual victim of Cuti's crime, under 18 U.S.C. § 3664(j)(1). *Id.* at * 3-6. The court then concluded that certain legal fees and expenses paid to Paul, Weiss were "necessary and related to Duane Reade's participation in the investigation or prosecution of the criminal case against Defendant Cuti" and subject to restitution, *id.* at * 7; as were certain other legal fees for the costs of counsel for current and former Duane Reade employees, *id.* at * 9-10; as well as the fees to Cooley, forensic accountants and Duane Reade accountants, and the Kroll Ontrack database, *id.* at * 11; for a total award of $7,615,217.90. *Id.* The court concluded that Cuti had the ability to pay the full amount of restitution, and ordered a payment schedule of 15% of his gross monthly income, beginning in the second month of his supervised release. *Id.* at *12. Given its conclusion that Oak Hill was only entitled to restitution as a "non-victim," the court ordered Cuti to make restitution payments in the amount of $6,145,961.40 to Duane Reade first, prior to making any restitution payments to Oak Hill, in accordance with § 3664(j)(1). *Id.* It is from this May 13, 2013 Opinion that Cuti appeals.

**DISCUSSION**

Cuti makes two challenges to the *Cuti Restitution Order*. He asserts that the district court's August 19, 2011 reversal of its July 29, 2011 order (declining to award restitution) and the timing of that reversal "immediately after denying Cuti's motion for a new trial" created the appearance of a "vindictive sentencing increase" under *North Carolina v. Pearce*, 395 U.S. 711 (1969), and that this requires vacatur. He also seeks vacatur because he argues that (1) Oak Hill was not a "victim"; (2) Duane Reade's employees' legal fees should not have been included in the restitution order; and (3) because the restitution order improperly included expenses incurred prior to the government's investigation and prosecution of Cuti's criminal case.

I.    **Applicable Legal Standards**

A.    **Vindictiveness**

In *Pearce*, the Supreme Court held that "[d]ue process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." 395 U.S. at 725. In so holding, the court noted that "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the

13

reasons for his doing so must affirmatively appear." *Id.* at 726. "Otherwise, a presumption arises that a greater sentence has been imposed for a vindictive purpose—a presumption that must be rebutted by objective information . . . justifying the increased sentence." *Alabama v. Smith*, 490 U.S. 794, 798-99 (1989) (omission in original and internal quotation marks omitted).

The *Pearce* presumption "do[es] not apply in every case where a convicted defendant receives a higher sentence on retrial" or at resentencing. *Texas v. McCullough*, 475 U.S. 134, 138 (1986). "The presumption exists to prevent not enlarged sentences after a new trial but rather vindictiveness of a sentencing judge." *United States v. Singletary*, 458 F.3d 72, 76 (2d Cir. 2006) (internal quotation marks omitted). "[B]efore a defendant may invoke the *Pearce* presumption, there must be a reasonable likelihood that the increase in sentence is the product of *actual vindictiveness* on the part of the sentencing authority." *Id.* (internal quotation marks omitted).

## B.    Restitution under the VWPA

The VWPA provides that "[t]he court, when sentencing a defendant convicted of an offense under this title . . . , may order . . . that the defendant make restitution to any victim of such offense." 18 U.S.C. § 3663(a)(1)(A). The

14

VWPA requires sentencing courts to consider the amount of the loss sustained by the victim as a result of the offense, the defendant's financial resources, the financial needs and earning ability of the defendant and the defendant's dependents, and other factors the court deems appropriate. *See id.* § 3663(a)(1)(B)(i). "While the district court must review these statutory factors, detailed factual findings for each factor are not required." *United States v. Battista*, 575 F.3d 226, 230 (2d Cir. 2009). "Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence." 18 U.S.C. § 3664(e).

We review a district court's restitution order "deferentially, reversing only if in our view the trial court abused its discretion." *United States v. Amato*, 540 F.3d 153, 159 (2d Cir. 2008). "To identify such abuse, we must conclude that a challenged ruling rests on an error of law, a clearly erroneous finding of fact, or otherwise cannot be located within the range of permissible decisions." *United States v. Boccagna*, 450 F.3d 107, 113 (2d Cir. 2006) (internal quotation marks omitted).

## II. Analysis

### A. Vindictiveness

We first address Cuti's vindictiveness argument. Cuti can point only to timing of the district court's pivot regarding the feasibility of separating out the money spent in contemplation of arbitration from the funds spent on the investigation for his criminal case. As an initial matter, this is not the customary procedural posture for a claim of judicial vindictiveness, which usually involves a sentencing following an appeal from or collateral attack on a defendant's conviction. With the particular procedural posture here, the district court had little reason or motivation to be vindictive. *See, e.g.,* *McCulloch*, 475 U.S. at 139 ("[U]nlike the judge who has been reversed, the trial judge here had no motivation to engage in self-vindication." (alteration in original and internal quotation marks omitted)).

Moreover, the district court's decision to award restitution was clearly within the court's discretion under Section 3663(a)(1)(B)(ii).[1] The court's

---

[1] Section 3663(a)(1)(B)(ii) provides that "[t]o the extent that the court determines that the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution under this section outweighs the need to provide restitution to any victims, the court *may decline* to make such an order." (emphasis added).

16

apparently sua sponte decision (to reconsider, and to undertake the significant task of considering a restitution award in this case) was neither an error of law, nor was it based on a clearly erroneous finding of fact. Emphasizing only the close temporal proximity between the court's order denying his motion for a new trial and its decision to award restitution, Cuti has not pointed to anything concrete in the record to support his theory of vindictiveness. Thus, as we find no abuse of the district court's discretion in its decision to award restitution under the VWPA, nor any "reasonable likelihood" that the decision was the product of actual vindictiveness, *Singletary*, 458 F.3d at 76, Cuti is not entitled to a presumption of vindictiveness.[2] *See McCulloch*, 475 U.S. at 139 ("The presumption of *Pearce* does not apply in situations where the possibility of vindictiveness is this speculative.").  In this instance, the claim of vindictiveness, unaided by the presumption, fails as clearly insufficient.

---

[2] Because we hold that the record cannot support any presumption of vindictiveness under *Pearce*, we need not and do not analyze the government's argument that neither the Supreme Court nor our Circuit has ever permitted the *Pearce* vindictiveness rule to apply outside of the context of a court having to re-sentence a defendant, either following remand or a grant of a new trial. **(Red 20-21)**

**B. Restitution**

Cuti's first two restitution arguments—that Oak Hill should not have been deemed eligible for restitution because it was not a victim of Cuti's fraud, and that Oak Hill should not have been reimbursed for paying its employee's legal fees—lack merit and do not warrant vacatur. We find, however, that in awarding Oak Hill restitution the district court failed to properly clarify whether the restitution award to Oak Hill included work by Paul, Weiss that only addressed Oak Hill's legal interests. As to Cuti's remaining argument, which challenges whether Duane Reade's payment of legal fees were "necessary" as contemplated under Section 3663(b)(4), we find this too requires vacatur and remand.

**1. Oak Hill as Non-Victim Entitled to Restitution**

First, there was no abuse of discretion in the court's decision to award Oak Hill restitution under § 3664(j)(1) on the theory that Oak Hill paid expenses on Duane Reade's behalf. We permit restitution in situations where a third party has directly paid an expense incurred by the victim, rather than having the victim pay and having the third party reimburse the victim afterward. *See, e.g.*, *United States v. Douglas*, 525 F.3d 225, 254 (2d Cir. 2008)

18

("The fact that [third party] Brink's paid for the headstone directly rather than having [victim] Moran Sr. pay for it and reimbursing him does not relieve Douglas of the obligation to make restitution for the cost incurred."); *United States v. Malpeso*, 126 F.3d 92, 95 (2d Cir. 1997) (upholding award of restitution to the FBI under the VWPA even though FBI had paid the expense directly instead of reimbursing the victim, there being "no significant functional or economic difference between the indemnitor's prior payment of the victim's expense and subsequent reimbursement").

The district court found that Oak Hill was not a victim and appropriately excluded fees paid to Paul, Weiss that reflected trial and post-trial work that advanced Oak Hill's own legal interests. However, the district court did not discuss whether any of Oak Hill's pre-trial payments to Paul, Weiss reflected work performed solely on behalf of Oak Hill. As Cuti points out, the record suggests that some of Paul, Weiss's pre-trial work may have been performed on behalf of Oak Hill. Therefore, we vacate this aspect of the district court's restitution award. On remand, the district court should exclude any payments made by Oak Hill to Paul, Weiss that reflected legal

19

work performed solely on Oak Hill's behalf, whether incurred before, during or after trial.

### 2. Legal Fees for Duane Reade's employees as "Necessary" Expenses

Next, Cuti asserts that Duane Reade did not "incur" legal fees on behalf of its employees because it was not required to reimburse these legal fees. This assertion is belied by the district court's conclusion and factual finding that "Duane Reade's expenses for its employees' counsel were necessary and related to its participation in the Government investigation and prosecution of . . . Cuti." *Cuti Restitution Order*, 2013 WL 1953741, at \*9. The district court concluded further that these expenses "were necessary and constituted an actual loss." *Id.* at \*10. This decision was soundly within the court's exercise of discretion. These costs were incurred during and as a direct result of the government's investigation into Cuti's fraud, and the district court reasonably concluded that Duane Reade was obligated to indemnify its employees' independent legal representation for their participation in the government's investigation. The district court, along with the magistrate judge, carefully parsed the legal fees paid for each individual employee, and only permitted

fees related to the government's investigation. Such expenditures—resulting from assistance provided to the government—are appropriately included in a restitution order under the VWPA. *See Battista*, 575 F.3d at 234 ("[T]he district court did not err in awarding the NBA attorneys' fees incurred *as a result of the assistance it provided to the government in its investigation and prosecution* of Battista's criminal offense." (emphasis added)). We therefore affirm this portion of the district court's restitution order.

### 3. Other Legal Expenses Incurred by Duane Reade

Cuti's final argument requires us to consider whether expenses incurred by Paul, Weiss on Duane Reade's behalf in the course of its work on the arbitration that also contributed to discovering Cuti's fraud, in addition to the expenses incurred by Cooley's internal investigations into both frauds, properly constitute "necessary . . . other expenses related to participation in the investigation or prosecution . . . related to the offense" under 18 U.S.C. § 3663(b)(4). To engage with this question we must further clarify the types of expenses that are "necessary" and "related to the offense" within the meaning of Section 3663(b)(4).

i.   *United States v. Maynard* and "Necessary" Expenses

Recently, in *United States v. Maynard*, we considered what constitutes "necessary" expenses under the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A(b)(4), reasoning that "[t]he victim expenses that are recoverable as restitution under 18 U.S.C. § 3663A(b)(4) are expenses the victim *was required to incur to advance the investigation* or prosecution of the offense." 743 F.3d at 381 (emphasis added).

In so concluding, we surveyed our prior case law, acknowledging that our Circuit takes "a broad view of what expenses are 'necessary'" in the restitution context. *See id.* (citing *United States v. Papagno*, 639 F.3d 1093, 1101 (D.C. Cir. 2011) ("In reaching our conclusion, we recognize that several other courts of appeals have taken a broader view of the restitution provision at issue here.")). In particular, our analysis considered two relatively recent restitution opinions from our Court—*Amato* and *United States v. Bahel*. *See Amato*, 540 F.3d 153; *Bahel*, 662 F.3d 610 (2d Cir. 2011).

In *Amato*, we affirmed a restitution award of attorney's fees and accounting costs incurred as a result of an internal investigation that uncovered fraud "notwithstanding that not all of the effort and expense was

requested by the government," *Maynard*, 743 F.3d at 381. In *Bahel*, a subsequent restitution case, "we affirmed restitution for legal fees incurred when the United Nations hired outside counsel to conduct an internal investigation rather than use on-staff lawyers." *See id.*; *see also Bahel*, 662 F.3d at 647-48. We reasoned that:

> In both [*Amato* and *Bahel*], the internal investigations paid for by the victims unmasked fraud and led to investigations conducted by the authorities. The expense of the internal investigations was *necessary* because the entity had interests to protect (the integrity of its ongoing operations and reputation, at the least) as well as a duty to protect those interests when faced with evidence, indicia, or a grounded suspicion of internal misconduct, and the investigation was a means calculated to achieve the protection of those interests.

*Maynard*, 743 F.3d at 381 (emphasis added).

Though *Maynard* involved an award of mandatory restitution under the MVRA, we have noted that "the provisions of the VWPA and the MVRA are nearly identical in authorizing an award of restitution." *Battista*, 575 F.3d at 230 (internal quotation marks omitted). In *Battista*, we concluded that the "holding in *Amato*—concededly decided in the MVRA context—applies to the almost verbatim statutory language in the VWPA. . . . The rationale that we provided in support of our conclusion that attorneys' fees were recoverable as

23

'other expenses' under the MVRA applies with equal force to the VWPA." *Id.* at 233-34.

With this in mind, we now extend *Maynard*'s reasoning to the VWPA. Thus, "necessary . . . expenses related to participation in the investigation" as described in the VWPA, 18 U.S.C. § 3663(b)(4), are "expenses the victim was required to incur to advance the investigation or prosecution of the offense," *Maynard*, 743 F.3d at 381. This may include internal investigations undertaken in the face of evidence—or grounded suspicion—of internal misconduct which ultimately unmask fraud. *Id.*

### ii. Duane Reade's Expenses

This extension of *Maynard* to restitution under the VWPA does not end our inquiry. This is the case for two reasons. First, the internal investigation here was initially motivated by Duane Reade's need to defend itself in Cuti's arbitration proceeding. Second, Duane Reade retained two separate law firms over the course of the arbitration, one to handle its own internal investigation, the other to assist with the government's investigation. As such, this case does not involve a straightforward "internal investigation paid for by the victim" that unmasks fraud as described in *Maynard*. *Id.*

24

In its final restitution order, the district court concluded that the government had proved Paul, Weiss's work was necessary under the VWPA by relying on the government's representations that Paul, Weiss's work "gave rise to the whole investigation of the real estate concession transactions," and "figured out there was a problem [with the credit and rebilling scheme]." *Cuti Restitution Order*, 2013 WL 1953741, at *9 (internal quotation marks omitted). The district court cited *Amato*, relying on our "broader view" of what "other expenses" could be deemed necessary in the restitution statutes, specifically including legal fees. *Id.*

If the purpose of an internal investigation is to uncover or investigate fraud "when faced with evidence, indicia, or a grounded suspicion of internal misconduct," *Maynard*, 743 F.3d at 381, then such expenses are properly deemed expenses that a "victim was required to incur to advance the investigation or prosecution of the offense," *id.*, and thus subject to restitution. On the other hand, where the record shows that a particular investigation was commenced, and its corresponding expenses incurred for another reason (here the defense of an impending arbitration by a disgruntled former executive) then that particular investigation cannot be "a means calculated to achieve the

25

protection" of a corporation's "ongoing operations and reputation" for the restitution purposes described in *Maynard*, *id.*

The record on appeal bears no indication of when (if at all) Duane Reade had Paul, Weiss shift its focus from a civil litigation defense to an internal investigation premised on a "grounded suspicion of internal misconduct." *Maynard*, 743 F.3d at 381. Upon being notified of the credit rebilling scheme in September 2006, Duane Reade's Audit Committee retained Cooley to conduct internal investigations and draft a report, while Paul, Weiss was working on the arbitration and filing counterclaims. Similarly, while Paul, Weiss may have uncovered evidence of the real estate concession scheme in February 2007 and subsequently "educate[d]" Cooley about it, App'x at 351, it was Cooley that undertook and prepared the May 2007 report on it for the Duane Reade board. Paul, Weiss meanwhile continued to work on the arbitration and amended its counterclaims and affirmative defenses accordingly in April 2007. A corporate client such as Duane Reade is entitled to expend as much as it deems prudent on preparations for its defense in a civil case or arbitration. However, under *Maynard*, not all such expenses are "necessary" for restitution purposes. Here, there is no outward indication of

26

when the investigative work specific to Paul, Weiss transmogrified from work aimed at getting "dirt"on Cuti for the arbitration, *see* App'x at 313, into an internal investigation to root out accounting or securities fraud.

Moreover, the entirety of the expenses incurred by Duane Reade for both the Cooley and the Paul, Weiss internal investigations, premised on the same underlying findings and conduct, cannot both have been "necessary" to advance the government's investigation under the VWPA. To the extent that Paul, Weiss's initial work on the real estate concession scheme, prior to turning over its information to Cooley, was the work that "unmasked [the] fraud," *Maynard*, 743 F.3d at 381, Cooley's work was probably not necessary. And to the extent that Paul, Weiss may have "identif[ied]" the real estate concession scheme, *see* App'x at 103 n.7, only to hand off the bulk of the investigative work to Cooley (to interview employees, prepare the May 18, 2007 report, etc.), the district court's parsing of Duane Reade's expenditures must reflect these distinctions. To conclude that both firms' expenses for investigating the same two underlying frauds were "necessary" to the government's case would vitiate any limit on our already broad view of "necessary" expenses. Inasmuch as the *Cuti Restitution Order* did so, this was

27

error requiring remand.

This is not to say that fees paid to two outside law firms working side-by-side on an internal investigation may not, in theory, be treated as necessary expenses under the VWPA. However, to be "necessary" for restitution, it is not enough that the expenses incurred "*helped* the investigation," which is what the government represented below. App'x at 403 (emphasis added). On remand, the question for the district court is whether the government has proved by a preponderance of evidence that some, or any, of Paul, Weiss's and Cooley's expenses were "necessary to the investigation or prosecution" of Cuti's criminal case. *See Maynard*, 743 F.3d at 382; *Amato*, 540 F.3d at 161. The court should consider at least whether the claimed expenditures by Paul, Weiss were redundant or duplicative of the expenses incurred for Cooley's investigatory work—including whether one firm's work served merely as a second opinion or to corroborate the other's findings—as well as whether the fact that two independent firms were at times working in tandem created additional, needless administrative costs.[3]

---

[3] For example, while it appears undisputed that Paul, Weiss is responsible for discovering the real estate concession fraud, and that it turned over its documents and findings to the government on May 22, 2007, it is unclear to what

Ultimately, it may be that the lack of clarity in the record results in some of Duane Reade's claimed expenditures not being subject to restitution.[4] We leave such a determination for the district court in the first instance. At a minimum, Paul, Weiss's expenses from meetings with the government, turning over its findings, and cooperating with the government's own investigation are recoverable under our precedent as necessary expenses under Section 3663(b)(4). *See Amato*, 540 F.3d at 162. The question for remand is whether any other Paul, Weiss and Cooley fees satisfy the necessity requirement as clarified in our opinion today.[5]

---

extent, if any, Cooley's report, dated May 18, 2007—and which was apparently turned over to the government at a later date—was redundant in view of Paul, Weiss's own investigative documents, and vice versa. *See, e.g.*, App'x at 350-51; 402-03; 456-57.

[4] Neither Cuti nor the government has provided us with the actual fee requests, which remain filed in hard copy with the district court. (As Cuti explained in his brief to this Court: "Should this Court decide to undertake the daunting task of attempting to examine these volumes itself, it should be aware that the volumes were not filed electronically, although multiple hardcopies were filed with the district court.").

[5] Cuti's final argument is that the VWPA imposes a temporal limitation that denies restituion for victim expenses incurred prior to the beginning of the government's investigation. Cuti relies on wording in the MVRA, which permits reimbursement of expenses "incurred during" a victim's participation in the criminal investigation. While we ordinarily read the MVRA and VWPA in pari materia, *see Battista*, 575 F.3d at 223-34, n. 7, the relevant statutory language

## CONCLUSION

For the reasons discussed above, we affirm the district court's restitution order in part and vacate and remand in part. Specifically, we affirm the district court's determination that Oak Hill could be awarded restitution as a "non-victim." However, we vacate and remand for an explicit distinction between fees for work performed solely on behalf of Oak Hill which are not the basis for restitution and fees Oak Hill paid on behalf of Duane Reade which are properly included in the restitution award. In addition, we affirm the district court's conclusion that Duane Reade's employees' attorneys fees were properly subject to restitution. As to whether Duane Reade's payment of fees and costs to Paul, Weiss and Cooley constitute "necessary" expenses under the VWPA, we vacate and remand for further proceedings consistent with this opinion. On remand, the district court is free to exercise its discretion as to whether "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the

---

differs. In contrast to the MVRA, the VWPA does not limit itself to expenses incurred "during" the investigation. Cuti's argument also runs counter to the Court's decision in *Amato*, which permitted restitution for attorney's fees incurred prior to the government's investigation. *See* 540 F.3d at 162.

30

sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process."  18 U.S.C. § 3663A(c)(3)(B).