20-2269-cr
*United States v. John Afriyie*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
_____

August Term, 2021

(Argued: October 19, 2021                    Decided:  February 25, 2022)

Docket No. 20-2269-cr
_____

UNITED STATES OF AMERICA,

*Appellee*,

v.

JOHN AFRIYIE,

*Defendant-Appellant*.

_____

Before: CALABRESI, POOLER, and PARKER, *Circuit Judges*.

Appeal from a judgment of the United States District Court for the Southern District of New York (Engelmayer, *J.*), directing restitution of $511,368.92 under the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A(b)(4). We address two issues prompted by the Supreme Court's ruling in *Lagos v. United States* that the

"words 'investigation' and 'proceedings' [in the MVRA] are limited to government investigations and criminal proceedings," 138 S. Ct. 1684, 1687 (2018): first, whether *Lagos*'s narrow construction of the MVRA compels us to abandon this Circuit's rule that attorneys' fees are recoverable as "other expenses" under the statute; and second, whether, given *Lagos*, a victim may recover expenses incurred through participation in an SEC investigation. We first reaffirm that attorneys' fees are not categorically excluded from recovery. *See United States v. Amato*, 540 F.3d 153, 159 (2d Cir. 2008). We next hold that restitution is appropriate under the MVRA only for expenses associated with criminal matters. Expenses arising from civil matters—including SEC investigations, even if closely related to a criminal case—do not qualify.

Affirmed in part, vacated and remanded in part.

_____

ROBERT A. CULP, Garrison, NY, *for Defendant-Appellant*.

EDWARD A. IMPERATORE, Assistant United States Attorney (Christine I. Magdo, Thomas McKay, Assistant United States Attorneys, *on the brief*), *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.

POOLER, *Circuit Judge*:

The Mandatory Victims Restitution Act ("MVRA") requires defendants convicted of certain crimes to reimburse their victims for "lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4). In *United States v. Amato*, we held that "other expenses" recoverable under the statute could include attorneys' fees incurred by victims while helping the government investigate and prosecute the defendant. 540 F.3d 153, 159-60 (2d Cir. 2008). *Amato* also held that victims could recover costs incurred while privately investigating the defendant. *Id.* at 162.

A decade later, in *Lagos v. United States*, the Supreme Court adopted a "more limited interpretation" of the MVRA. 138 S. Ct. 1684, 1690 (2018). Expressly abrogating *Amato*'s second holding, *Lagos* held that "the words 'investigation' and 'proceedings' are limited to government investigations and criminal proceedings." *Id.* at 1687.

3

The appeal before us raises two issues of law prompted by *Lagos*: first, whether *Amato*'s primary holding—that attorneys' fees can sometimes be "other expenses"—survives *Lagos*; and second, whether a victim can recover expenses incurred while participating in a Securities and Exchange Commission investigation of the defendant.

We answer yes to the first question and no to the second. *Lagos* abrogated *Amato* only to the extent it awarded restitution for private investigatory expenses. It remains the law of this Circuit that "other expenses" may include attorneys' fees, provided the statute's other strictures are met. *Lagos*, however, instructs us to read narrowly the MVRA's requirement that expenses arise from a victim's "participation in the investigation or prosecution of the offense." 18 U.S.C. § 3663A(b)(4). Turning fresh eyes to this phrase, we hold that restitution is appropriate only for expenses associated with criminal matters. Civil matters— including SEC investigations, even if closely related to a criminal case—do not qualify.

On these bases, we affirm in part and vacate in part the restitution order in this case. John Afriyie was convicted of securities fraud and wire fraud after

4

trading on inside information he misappropriated from his employer, MSD Capital. On July 1, 2020, the district court entered the restitution order on appeal now. It covers the fees MSD paid the law firm Sullivan & Cromwell to guide MSD's compliance with investigations by the U.S. Attorney's Office ("USAO") and the SEC; to help prepare four MSD witnesses to testify at Afriyie's criminal trial; and to represent MSD during the post-verdict restitution proceedings.

We affirm as to Sullivan & Cromwell's involvement in the criminal investigation, the preparation of trial witnesses, and the restitution proceedings. These expenses arose from Afriyie's criminal "investigation or prosecution," 18 U.S.C. § 3663A(b)(4), and the district court did not abuse its discretion in carefully considering, and then affirming, their necessity, *see United States v. Razzouk*, 984 F.3d 181, 185 (2d Cir. 2020) ("We review a restitution order 'deferentially, and we will reverse only for abuse of discretion.'" (citation omitted)). We vacate as to expenses related to the SEC investigation, which as a matter of law are not recoverable, and we remand for the district court to amend the order in accordance with this opinion.

# BACKGROUND

This is our third appeal arising from Afriyie's insider trading. *See United States v. Afriyie*, 929 F.3d 63 (2d Cir. 2019) ("*Afriyie I*"); *SEC v. Afriyie*, 788 F. App'x 59 (2d Cir. 2019). To briefly summarize what brought us here: In January 2015, MSD hired Afriyie, a 2010 Cornell graduate, as an investment analyst. Afriyie's job at MSD was to research potential investments and make recommendations about those investments. He received trainings regarding MSD's policies against insider trading and the safekeeping of confidential client information. MSD rules prohibited him from trading in individual securities from his own brokerage account.

In January 2016, MSD was approached by Apollo Global Management, a private equity firm looking to fund an acquisition of ADT Corporation, the home security and alarm company. After MSD expressed interest in investing, Apollo gave MSD material nonpublic (i.e., inside) information about the deal. On January 27, 2016, MSD's compliance department sent a "potential restriction" email to its investment professionals, including Afriyie. *Afriyie I*, 929 F.3d at 66. The email indicated that MSD would receive inside information about a potential deal

6

involving a "U.S. listed alarm monitoring services company" because of a "financing opportunity in connection with a potential take-private transaction by . . . Apollo Global." *Id.*

The next morning, even though he was not assigned to work on the ADT deal, Afriyie accessed the ADT and Apollo folders on MSD's shared drive. He then bought an ADT call option. That afternoon, MSD added ADT to its list of "restricted" securities. *Id.* Afriyie received an email saying so. Over the next two weeks, in violation of both company policy and federal securities laws, Afriyie bought two thousand more ADT call options for around $25,000. On February 16, the day Apollo publicly announced the ADT acquisition, ADT's stock jumped 47.5 percent, and the value of Afriyie's call options investment increased by 6,000 percent. Afriyie's sale of the options over the following week netted him a profit of $1,564,071.60. Later, Afriyie changed the name on his brokerage account to his mother's name and, on several phone calls with TD Ameritrade about the account, pretended to be his mother.

Federal prosecutors in the Southern District of New York and SEC regulators began investigating Afriyie shortly after he sold his call options. On

7

April 13, 2016, Afriyie was arrested, and the SEC filed a civil securities fraud complaint against him. A criminal indictment charging him with criminal securities fraud and wire fraud followed on June 1, 2016, as did criminal convictions by jury trial in January 2017 and a judgment of civil liability in November 2018.

In Afriyie's two earlier appeals, we upheld his criminal convictions and the civil judgment. *Afriyie I*, 929 F.3d at 66 (criminal); *SEC v. Afriyie*, 788 F. App'x at 60-61 (civil). Today our task is narrower: We review only Afriyie's criminal restitution bill. The restitution request MSD submitted before Afriyie's sentencing covered fees it paid lawyers at Sullivan & Cromwell during the USAO and SEC investigations, the criminal proceedings, and MSD's own investigation of Afriyie. More than a hundred pages of timesheets and invoices showed how Sullivan & Cromwell responded on MSD's behalf to three subpoenas from the SEC, two criminal trial subpoenas from Afriyie, and numerous requests for documents and information from the USAO and SEC. The firm produced more than 54,700 pages of documents and data in response to these requests. It also monitored the progress of the criminal proceedings and the SEC enforcement action; at the

USAO's invitation, helped prepare four MSD employees to testify at Afriyie's criminal trial; and represented MSD during post-verdict restitution proceedings. All told, Sullivan & Cromwell produced roughly 1,200 hours of work for MSD. Its fees, which MSD paid fully and for which it sought reimbursement from Afriyie, totaled $691,046.42.

At sentencing, the district court ordered Afriyie to reimburse MSD for the full $691,046.42. A few months later, that figure was lowered to $663,028.92 after excising Sullivan & Cromwell's billings for "bare attendance at proceedings in Afriyie's case," App'x at 40, 42, following a decision from this Court clarifying that such expenses generally are not cognizable under the MVRA, *see United States v. Cuti*, 708 F. App'x 21, 25 (2d Cir. 2017).

Then, in our July 2019 ruling affirming Afriyie's convictions, we remanded for the district court to recalculate restitution yet again—this time in light of the intervening Supreme Court decision in *Lagos* prohibiting the recovery of internal investigation expenses. *Afriyie I*, 929 F.3d at 74 (citing *Lagos*, 138 S. Ct. at 1688-89). On remand, the government and MSD voluntarily cut $151,660 from the restitution request, excising Sullivan & Cromwell's fees related to MSD's internal

9

investigation. But they urged that Afriyie remain responsible for the remaining $511,368.92, which covered three other categories of work done by Sullivan & Cromwell:

- **Category 1:** Responding to subpoenas and document requests from the USAO and the SEC;

- **Category 2:** Preparing the four MSD witnesses to testify at Afriyie's criminal trial; and

- **Category 3:** Representing MSD in connection with the post-verdict restitution proceedings.

The district court ordered Afriyie to reimburse MSD for all three categories of expenses, concluding that "[r]estitution for fees and expenses incurred in each . . . categor[y] is consistent with the MVRA as construed in *Lagos*." *United States v. Afriyie*, 16-CR-377 (PAE), 2020 WL 634425, at *2 (S.D.N.Y. Feb. 11, 2020). Afriyie disagreed and took this appeal.

**DISCUSSION**

"Any dispute as to the proper amount or type of restitution shall be resolved by the [district] court by the preponderance of the evidence." *United States v. Bahel*,

10

662 F.3d 610, 647 (2d Cir. 2011) (quoting 18 U.S.C. § 3664(e)). We review a restitution order's legal conclusions de novo and its findings of fact for clear error, reversing "only if in our view the trial court abused its discretion." *Amato*, 540 F.3d at 158-59.

Afriyie does not challenge that MSD, from whom he misappropriated inside information, is a victim covered by the MVRA. Nor does Afriyie contest that his crimes of conviction, securities fraud and wire fraud, are covered offenses.[1] Rather, the parties' only dispute is whether the fees MSD paid Sullivan & Cromwell during the civil investigation and the criminal investigation, trial, and sentencing

---

[1] There is some disagreement in the district courts about whether securities fraud is a covered offense. Afriyie was convicted of securities fraud under Section 10(b) of the Exchange Act and Rule 10b-5—a Title 15 offense. 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5. The MVRA applies in "sentencing proceedings for convictions of . . . an offense against property *under this title*," i.e., Title 18, or of other specific crimes not relevant here. 18 U.S.C. § 3663A(c)(1) (emphasis added). On this basis, a few district courts in this Circuit have concluded that the MVRA does not allow restitution for securities fraud. *See United States v. Petit*, 541 F. Supp. 3d 304, 307 (S.D.N.Y. 2021); *United States v. Cuti*, No. 08 Cr. 972(DAB), 2011 WL 3585988, at *6 n.9 (S.D.N.Y. July 29, 2011). By contrast, the district court here stated that the MVRA applies to "defendants convicted of a listed range of offenses, including securities fraud[.]" *Afriyie*, 2020 WL 634425, at *1. We need not resolve this debate, however, because the parties never raised it and because Afriyie was also convicted of wire fraud, 18 U.S.C. § 1343, a Title 18 offense plainly within the statute.

are covered expenses. To answer that question, we must clarify a pair of legal issues: first, whether, in light of the Supreme Court's ruling in *Lagos*, a victim may ever recover attorneys' fees under the MVRA; and second, whether a victim may recover expenses it incurred while participating in an SEC investigation. We then address the district court's factual findings to determine whether it abused its discretion when calculating MSD's restitution.

**I.     Whether, After *Lagos*, Attorneys' Fees May Be "Other Expenses" Under the MVRA.**

The MVRA limits recoverable expenses to "lost income and necessary child care, transportation, and other expenses." 18 U.S.C. § 3663A(b)(4). Our Circuit's well-established rule is that "necessary . . . other expenses" can include attorneys' fees. *Amato*, 540 F.3d at 159; *see also Bahel*, 662 F.3d at 647; *United States v. Cuti*, 778 F.3d 83, 92 (2d Cir. 2014). Afriyie argues that *Lagos*'s narrow interpretation of the statute repudiated this rule. We disagree. Although *Lagos* indeed overruled a portion of *Amato* not at issue here, it neither abrogated nor is inconsistent with *Amato*'s attorneys'-fees holding, and thus remains binding.

**A.**

We begin by briefly reviewing *Amato* and *Lagos*.

12

*Amato* addressed a district court's order that two defendants convicted of mail fraud and wire fraud reimburse their corporate victim for attorneys' fees and accounting costs the corporation incurred while participating in the criminal investigation and prosecution of the defendants and while conducting its own investigation of the defendants. 540 F.3d at 156, 162. The case raised a question of first impression in our Circuit whether "the term 'other expenses' in § 3663A(b)(4) . . . can[] be read to include attorney fees and accounting costs." *Id.* at 159. We held that it could: The "plain language of the statute" requires that expenses be "necessary" and that they be incurred while participating in the investigation or prosecution of the offense, or while attending proceedings related to the offense. *Id.* at 160. But the statute "does not otherwise limit the type of expenses that may be included." *Id.*

In so ruling, we rejected the defendants' invocation of ejusdem generis. Under this canon of statutory construction, "general terms that follow specific ones are interpreted to embrace only objects of the same kind or class as the specific ones." *Id.* The defendants argued that "other expenses" could not include attorneys' fees because they are not sufficiently "similar in nature to" lost income,

13

child care, and travel expenses. We disagreed. Sometimes, we observed, Congress uses "specific terms not to limit the succeeding general ones, but instead simply to remove any doubt that the specific terms are included under the statute." *Id.* at 161 (discussing *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 227 (2008)). The MVRA's drafters, for instance, "may have feared that courts would overlook child care and transportation expenses unless these items were specifically named." *Id.* By contrast, "[s]uch fears would not likely have extended to attorney fees and accounting costs because these expenses are so obviously associated with investigation and prosecution, particularly in the case of fraud offenses." *Id.*

By allowing the victim to recover all its expenses, *Amato* thus held that (1) the "necessary . . . other expenses" a victim could recover include attorneys' fees and accounting costs, and (2) a victim could recover expenses (attorneys' fees or otherwise) incurred while participating not only in a government investigation and prosecution, but also the victim's own investigation of the conduct underlying the offense. *Id.* at 159-63.

A circuit split soon developed around *Amato*'s second holding. Several circuits agreed with us that the MVRA allowed a victim to recover costs from a

14

private investigation. *See United States v. Elson*, 577 F.3d 713, 726-29 (6th Cir. 2009); *United States v. Hosking*, 567 F.3d 329, 331-32 (7th Cir. 2009); *United States v. Stennis-Williams*, 557 F.3d 927, 930 (8th Cir. 2009); *United States v. Gordon*, 393 F.3d 1044, 1056-57 (9th Cir. 2004). The D.C. Circuit disagreed. *United States v. Papagno*, 639 F.3d 1093, 1100 (D.C. Cir. 2011).

In *Lagos*, the Supreme Court sided with the D.C. Circuit. The Court held that "the words 'investigation' and 'proceedings'" in the MVRA are "limited to government investigations and criminal proceedings." *Lagos*, 138 S. Ct. at 1687. Consequently, the victim in *Lagos*—General Electric, which had been defrauded out of tens of millions of dollars by a company it had lent money to—could not recover the attorneys', accountants', and consulting fees it expended while investigating the fraud and while participating in bankruptcy proceedings tangential to its defrauder's prosecution. *Id.* at 1687-88.

To reach its conclusion, the Court parsed the MVRA's "wording, both its individual words and the text taken as a whole." *Id.* at 1688. Because the statute pairs investigation with prosecution, the two things must be "of the same general type." *Id.* And because the word prosecution means "a government's criminal

15

prosecution," this "suggests that the word 'investigation' may refer to a government's criminal investigation." *Id.* A "similar line of reasoning" suggested to the Court that the word "proceedings" refers to "criminal proceedings in particular, rather than to 'proceedings' of any sort." *Id.*

To this discussion the Court added a few words on "*noscitur a sociis*, the well-worn Latin phrase that tells us that statutory words are often known by the company they keep." *Id.* at 1688-89. Lost income, child care, and transportation costs, per the Court, are "the kind of expenses that a victim would be likely to incur when he or she (or, for a corporate victim . . . , its employees) misses work and travels to talk to government investigators, to participate in a government criminal investigation, or to testify before a grand jury or attend a criminal trial." *Id.* at 1688. By contrast, "the statute says nothing about the kinds of expenses a victim would often incur when private investigations, or, say, bankruptcy proceedings are at issue, namely, the costs of hiring private investigators, attorneys, or accountants." *Id.*

Finally, the Court was persuaded that a broad interpretation of "investigation" and "proceedings" would "create significant administrative

16

burdens" that Congress likely did not intend. *Id.* at 1689. The Court's "narrower construction" purported to avoid "requir[ing] courts to resolve . . . time-consuming controversies" about whether particular expenses incurred during participation in a private investigation were in fact necessary and whether civil proceedings were sufficiently related to the offense of conviction. *Id.*

**B.**

The parties agree *Lagos* abrogated *Amato*'s second holding: It is now clear that expenses incurred during a corporate victim's internal investigation of the defendant are not covered by the MVRA. That is why the government and MSD disclaimed restitution for Sullivan & Cromwell's fees for running MSD's internal investigation. But the parties dispute what *Lagos* did to *Amato*'s first holding: that attorneys' fees incurred while participating in a government investigation are recoverable. Afriyie argues that *Lagos* provides a basis for abandoning this rule. It does not.

Published panel decisions like *Amato* are binding on future panels unless they are "reversed *en banc* or by the Supreme Court." *United States v. Jass*, 569 F.3d 47, 58 (2d Cir. 2009). "[T]here is an exception to this general rule when an

17

'intervening Supreme Court decision . . . casts doubt on our controlling precedent.'" *In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 154 (2d Cir. 2015) (ellipses in original) (quoting *Wojchowski v. Daines*, 498 F.3d 99, 106 (2d Cir. 2007)). For the exception to apply, "the intervening decision need not address the precise issue already decided by our Court," but there must be a "conflict, incompatibility, or inconsistency between this Circuit's precedent and the intervening Supreme Court decision." *Id.* at 155 (internal alterations and citations omitted). We approach this inquiry humbly, cognizant that "one panel's overruling of the holding of a case decided by a previous panel is perilous," can "degrade the expectation of litigants, who routinely rely on the authoritative stature of the Court's panel opinions," and may "diminish[] respect for the authority of three-judge panel decisions and opinions[,] by which the overwhelming majority of our work . . . is accomplished." *Id.* at 157.

As an initial matter, *Amato*'s attorneys'-fees rule has not been "reversed *en banc* or by the Supreme Court." *Jass*, 569 F.3d at 58. *Lagos* addressed only the kinds of investigations and proceedings covered by the MVRA, not the categories of

18

expenses recoverable pursuant to covered investigations and proceedings. Afriyie recognizes this.

Nor can we find the "conflict, incompatibility, or inconsistency" between *Lagos* and *Amato*'s attorneys'-fees rule necessary to render the rule not binding on us. *In re Arab Bank*, 808 F.3d at 155. Afriyie makes much of *Lagos*'s observations that the expenses the MVRA lists before "other expenses" are those "a victim would be likely to incur when he or she . . . misses work and travels to talk to government investigators, to participate in a government criminal investigation, or to testify before a grand jury or attend a criminal trial," and that the statute "says nothing about" attorneys' fees. 138 S. Ct. at 1688. To Afriyie, these revive the argument, rejected in *Amato*, that attorneys' fees are too dissimilar to lost income, child care, and travel costs to ever be recoverable "other expenses."

Not so. To be sure, *Lagos* prohibits victims from recovering attorneys' fees for a "private investigation that the victim chooses on its own to conduct." *Id.* at 1690. But that is because the statute is "limited to government investigations and criminal proceedings," *id.* at 1687, not because it categorically excludes attorneys' fees. *Lagos* did not even rule out a victim recovering attorneys' fees and accounting

19

costs "incurred during a private investigation that was pursued at a government's invitation or request." *Id.* at 1690.

*Lagos* therefore does not displace *Amato*'s commonsense recognition that attorneys' fees are sometimes "necessary . . . expenses incurred" to properly participate in a government investigation. This case proves *Amato*'s point. As part of its "participation in the investigation [and] prosecution" of Afriyie's insider trading, MSD had to respond to numerous subpoenas and document requests from the government and Afriyie's attorneys—and needed counsel to appropriately respond. Like the law firm in *Amato*, Sullivan & Cromwell "represented [MSD] at meetings with the government and assisted in gathering and producing evidence necessary to the government's prosecution, as well as responding to document requests made by the defendants." *Amato*, 540 F.3d at 162. The firm advised MSD on its document retention obligations; communicated with the USAO and Afriyie; collected responsive materials; reviewed those materials for responsiveness and privilege; and produced almost 55,000 pages of documents and data. It beggars reality to say that the money MSD spent on its attorneys did not constitute "expenses [MSD] was required to incur to advance the

investigation or prosecution of the offense." *United States v. Maynard*, 743 F.3d 374, 381 (2d Cir. 2014).[2] People use lawyers to help them comply with legal demands. By allowing victims like MSD to recover "necessary . . . other expenses" beyond lost income, child care, and transportation, the MVRA's "plain language" acknowledges this. *Amato*, 540 F.3d at 160. *Lagos* is not to the contrary.

Nor does *Lagos*'s concern about administrative burdens require us to discard our attorneys'-fees rule. Afriyie objects that Sullivan & Cromwell's "submission of over a hundred pages of bills" required the district court to grapple with "tedious and debatable details." Appellant's Br. at 10. According to Afriyie, the district court's review of these bills brought to fruition *Lagos*'s concern about district courts deciding "whether each witness interview and each set of documents reviewed was really 'necessary' to the investigation." *Lagos*, 138 S. Ct. at 1689.

---

[2] Nor was MSD required to turn to its in-house counsel instead of retaining a firm like Sullivan & Cromwell. *Amato* "forecloses th[e] argument" that legal fees are not "necessary" under the MVRA if a victim "retain[s] a major New York City law firm to represent it . . . when [it] had in-house counsel at its disposal." *Bahel*, 662 F.3d at 647-48 (internal quotation marks omitted).

But *Lagos*'s discussion of administrative burdens came in the context of its decision to give two ambiguous words—"investigation" and "proceedings"—a narrow construction instead of a broad one. *See id.* at 1688 ("The individual words suggest (though they do not demand) our limited interpretation."). The attorneys'-fees rule, by contrast, "follows from the plain language of the statute." *Amato*, 540 F.3d at 160. To the extent a district court must review a law firm's timesheets during restitution proceedings, this is a requirement mandated by the MVRA itself—no different from the court's obligation to review a victim's parking and child care receipts.

Finally, we find nothing in other circuits' post-*Lagos* case law to undermine our adherence to *Amato*'s attorneys'-fees rule. Afriyie urges us to follow *United States v. Koutsostamatis*, 956 F.3d 301 (5th Cir. 2020). There, the Fifth Circuit considered whether to award British Petroleum restitution under the MVRA for its retention of "a 44-person digital security team" as "part of a private investigation" into extortion at the company—an investigation undertaken at the FBI's request. *Id.* at 304-06. The court first held that, because the FBI had asked for BP's help, the expenses "satisfy the participation requirement of § 3663A(b)(4)."

22

*Id.* at 306. Nevertheless, after applying ejusdem generis and noscitur a sociis, the court concluded that BP could not recover its expenses, because a "digital security team and outside contractors are not remotely similar to lost income, child care, or transportation." *Id.* at 308.

Afriyie's reliance on *Koutsostamatis* is unavailing. The case did not "involve[] . . . legal fees." *Id.* at 311 n.4. The somewhat unusual expense at issue in *Koutsostamatis* is a far cry from the routine attorneys' fees at issue in this case. And to the extent the Fifth Circuit's embrace of ejusdem generis puts it at odds with *Amato*, we are of course not bound to reject our well-considered precedents in favor of another circuit's.[3]

In sum, we conclude that *Lagos* "neither overruled . . . nor cast doubt on" *Amato*'s attorneys'-fees rule such "that we are free to chart a new course here."

---

[3] We note as well that the First Circuit has left open the question of whether attorneys' fees are permissible as "other expenses" after *Lagos*, but that court has not indicated that it would reach a different conclusion from ours. *See In re Akebia Therapeutics, Inc.*, 981 F.3d 32, 38 n.4 (1st Cir. 2020) ("[B]ecause the defendants did not challenge attorney's fees as a category of expenses ripe for reimbursement under the MVRA's 'necessary . . . other expenses' and Akebia has obviously not raised this as a legal issue for our review, we assume without deciding that attorney's fees are proper fodder for restitution as part of § 3663A(b)(4)'s 'necessary . . . other expenses.'").

*Deem v. DiMella-Deem*, 941 F.3d 618, 623-24 (2d Cir. 2019). It remains the law of this Circuit that "other expenses" may include attorneys' fees.

## II. Whether Expenses Incurred Through Participation in an SEC Investigation Are Recoverable Under the MVRA.

Expenses incurred through an SEC investigation or other non-criminal matter, however, stand on a different footing. The district court concluded that MSD could recover for Sullivan & Cromwell's SEC work because "the USAO and SEC investigations were parallel, coextensive, and symbiotic." *Afriyie*, 2020 WL 634425, at *2. "[A]ny other result," the district court explained at sentencing, "would draw an 'artificial and unrealistic distinction' between the two investigations[.]" App'x at 35-36 (quoting *United States v. Skowron*, 839 F. Supp. 2d 740, 749 (S.D.N.Y. 2012)).

This Court has not yet addressed whether the MVRA permits recovery of SEC-incurred expenses. It is possible that, had we considered the question before *Lagos*, we would agree with the district court. But *Lagos* instructs us to read "investigation" more narrowly now. Doing so, we conclude that if the investigations and prosecutions in the MVRA must be "of the same general type," and the word "prosecution" "must refer to a government's criminal prosecution,"

24

*Lagos*, 138 S. Ct. at 1688, then the word "investigation" likewise must refer to a government's criminal investigation.[4] In this case, then, the "prosecution of the offense" means the USAO's prosecution of Afriyie. And the "investigation . . . of the offense" means the investigation the USAO undertook in advance of that prosecution.

To be sure, *Lagos* alone does not mandate this conclusion. That case held that "investigation" means "government investigation[]," *id.* at 1687, and SEC investigations are governmental. But because only private investigations were at issue in *Lagos*, the Court was not asked, as we are now, whether all government investigations are alike. And we note that, in explaining why private investigations are excluded, the Court did offer as a "perfectly natural" reading of the statute the holding we now reach: that "a victim 'participat[es] in the investigation' or 'attend[s] . . . proceedings related to the offense' if the investigation at issue is a government's criminal investigation, and if the

_____

[4] As in *Lagos*, we need not address whether expenses from a private investigation pursued at the invitation or request of criminal investigators are recoverable as expenses associated with the government's criminal investigation. *See Lagos*, 138 S. Ct. at 1690.

25

proceedings at issue are criminal proceedings conducted by a government." *Id.* at 1688 (alterations in original). "[W]e are obligated to accord great deference to Supreme Court *dicta*" like this, *United States v. Harris*, 838 F.3d 98, 107 (2d Cir. 2016) (internal quotation marks omitted)—especially where, as here, we have no precedent in our own Circuit to guide us.

No less importantly, *Lagos* sharpens our focus on the MVRA as a criminal statute whose provisions are closely tethered to a defendant's criminal case. The MVRA is housed in Title 18, the federal criminal code. 18 U.S.C. § 3663A. It applies during criminal sentencing. *Id.* § 3663A(a)(1). After *Lagos*, a victim can no longer recover expenses arising from private investigations and civil proceedings. The statute is also more circumscribed than other restitution statutes: It does not "specifically require restitution for the 'full amount of the victim's losses.'" *Lagos*, 138 S. Ct. at 1689 (quoting 18 U.S.C. §§ 2248(b), 2259(b), 2264(b), 2327(b)). Nor does it provide restitution for "the value of the time reasonably spent by the victim in an attempt to remediate the intended or actual harm incurred by the victim from the offense." *Id.* (quoting 18 U.S.C. § 3663(b)(6)). The MVRA's narrow focus on losses related to criminal actions reinforces our view that the statute does not allow

a victim to recover at a criminal restitution hearing expenses incurred while the victim participated in a civil enforcement investigation.

We find none of the arguments to the contrary persuasive. First, SEC investigations may at first appear to have a stronger textual hook than private investigations did in *Lagos*. For instance, while one does not "participate" in private investigations so much as "conduct" or "provide for" them, *see Lagos*, 138 S. Ct. at 1688, one can be said to "participate" in an SEC investigation by, for instance, responding to subpoenas and document requests. And it initially might be thought that an SEC investigation is an "investigation . . . of the offense," especially where parallel SEC and USAO investigations target the same conduct.

The problem with these arguments is that while a victim certainly may "participate" in an SEC investigation, we do not think an SEC investigation can be an "investigation . . . of the offense." Nothing in the MVRA suggests its applicability to civil offenses. *Lagos* also makes clear that a non-criminal investigation can no longer fall within the MVRA merely because it rests on the same conduct as a criminal investigation; after all, MSD's internal investigation of Afriyie, the expenses from which *Lagos* rendered unrecoverable, rested on the

27

same conduct that resulted in his convictions. And recall *Lagos*'s holding that the word "proceedings" "refers to criminal proceedings in particular, rather than to 'proceedings' of any sort." *Id.* If the MVRA covered civil offenses, then cases like *SEC v. Afriyie*, the civil case that followed the SEC's investigation, would have "proceedings related to the offense" such that victims could recover attorneys' fees for "attendance at [those] proceedings." 18 U.S.C. § 3663A(b)(4). Yet *Lagos* squarely forecloses recovery for expenses incurred while attending non-criminal proceedings. 138 S. Ct. at 1690. Our conclusion that MSD should likewise be prohibited from recovering for its participation in the SEC's civil investigation is consistent with this understanding.

We are also unpersuaded that coordination between USAO and SEC investigations renders SEC expenses recoverable. The government points out that Sullivan & Cromwell generally made simultaneous productions to the USAO and the SEC. Gov't Br. at 24-25. On this basis, it urges that the district court did not abuse its discretion in determining that the expenses incurred in responding to nearly identical USAO and SEC document requests were "necessary" expenses. But the government conflates two distinct inquiries. Before determining whether

28

an expense was necessary, we must determine whether it was incurred pursuant to an investigation covered by the statute. And, for the reasons above, we conclude as a matter of statutory interpretation that when the MVRA refers to "investigation," it does not mean an SEC investigation.

Still, we add a practical note. Our ruling will require the district court to again review Sullivan & Cromwell's timesheets. *See* App'x at 58-163. The government notes that some time entries reflect work on both the civil and criminal investigations.[5] Of course, there are also numerous entries reflecting work Sullivan & Cromwell did solely in connection with the SEC investigation.[6] We reiterate that although the fees for the law firm's work on the SEC investigation are not recoverable, the fees for the firm's work on the USAO investigation are.

---

[5] *See, e.g.*, App'x at 69 (Time Entry for Ralph Grullon, April 6, 2016 ("Consult with A. Ostrager re: the processing and production specifications for documents being produced to the SEC and DOJ . . . .")); App'x at 67 (Time Entry for James Ivker, March 31, 2016 ("Coordinated production of documents to SEC & DOJ, per request of Annie Ostrager.")); App'x at 63 (Time Entry for Ann-Elizabeth Ostrager, April 6, 2016 ("Drafted cover letters for production to SEC/DOJ")).

[6] *See, e.g.*, App'x at 60 (Time Entry for Steven Peikin, April 11, 2016 ("Teleconference with SEC regarding insider trading policies.")); App'x at 64 (Time Entry for Ann-Elizabeth Ostrager, April 8, 2016 ("Communication with S. Peikin re: plan for addressing SEC requests")); App'x at 61 (Time Entry for Ann-Elizabeth Ostrager, March 31, 2016 ("Review of subpoena received from SEC")).

We trust the district court to devise a reasonable solution concerning these commingled billing items when recalculating MSD's recovery.

**III.    Afriyie's Restitution Order.**

Two rules—one old, one new—emerge from the discussion above. First, a victim may recover attorneys' fees it was required to incur to advance the investigation or prosecution of the offense. But second, only criminal investigations—not private investigations, and not civil enforcement investigations—qualify. With these rules in mind, we turn to Afriyie's restitution order. "We review a restitution order 'deferentially, and we will reverse only for abuse of discretion.'" *Razzouk*, 984 F.3d at 185 (quoting *United States v. Boccagna*, 450 F.3d 107, 113 (2d Cir. 2006)). "Such abuse can be found only where the challenged ruling rests on an error of law [or] a clearly erroneous finding of fact, or otherwise can not be located within the range of permissible decisions." *United States v. Qurashi*, 634 F.3d 699, 701 (2d Cir. 2011) (internal quotation marks omitted).

Afriyie was ordered to pay MSD $511,368.92 for three categories of expenses. Category 1 covered Sullivan & Cromwell's work responding to

subpoenas and document requests from the USAO and the SEC. Category 2 covered the law firm's work preparing MSD witnesses to testify at Afriyie's criminal trial. Category 3 covered the law firm's representation of MSD in connection with post-verdict restitution proceedings.

We affirm as to the Category 1 expenses to the extent they involved the USAO investigation. As attorneys' fees, these expenses are cognizable "other expenses." 18 U.S.C. § 3663A(b)(4). Because the expenses were incurred responding to requests by federal prosecutors, they were plainly "incurred during participation in the [criminal] investigation or prosecution of the offense." *Id.* And the district court, having reviewed the timesheets, found that "the sums incurred were reasonably incurred." App'x at 34. Afriyie does not challenge this factual finding, and we find no abuse of discretion in the district court's conclusion. By contrast, we vacate as to the SEC subpoena and document request expenses. As we have explained, these expenses are not recoverable as a matter of law.

We reject Afriyie's challenges to the Category 2 and Category 3 expenses. Afriyie objects, as to the Category 2 expenses, that whereas MSD had no choice but to respond to subpoenas from the USAO, it was not necessary for Sullivan &

Cromwell to prepare MSD's witnesses for trial. The district court disagreed. At sentencing, it found by a preponderance of the evidence that Sullivan & Cromwell's fees for helping prepare MSD witnesses "were a direct, foreseeable, and necessary result of the government's investigations into and the prosecution of Mr. Afriyie." App'x at 34.

We agree with the district court. Afriyie does not dispute that prosecutors called four MSD employees to testify as trial witnesses in criminal "proceedings related to the offense" of conviction, or that the preparation of these witnesses occurred "during participation in the investigation or prosecution of the offense." 18 U.S.C. § 3663A(b)(4). *Lagos* thus does not preclude this category of expenses. And the district court did not abuse its broad discretion by finding that the expenses incurred in preparing witnesses, at the invitation of the USAO, were "necessary" to MSD's participation in Afriyie's prosecution. We therefore affirm the district court as to the Category 2 expenses.

Finally, we affirm as to Category 3: MSD's expenses for Sullivan & Cromwell's work during the post-verdict restitution proceedings. As a textual matter, expenses like these are subject to recovery under the MVRA. Restitution,

32

as the district court noted, occurs during the sentencing phase of a federal criminal trial. *See* 18 U.S.C. § 3663A(a)(1) (noting that restitution is imposed "when sentencing a defendant"). Consequently, the expenses a victim incurs while preparing for and participating in restitution proceedings are "incurred during participation in the . . . prosecution of the offense or attendance at proceedings related to the offense" and so may be recovered to the extent the district court finds them necessary. *Id.* § 3663A(b)(4). Afriyie does not assert that MSD's restitution expenses were unreasonable. *Cf. United States v. Chan*, No. 16-cr-10268-IT, 2019 WL 3975579, at *8 (D. Mass. Aug. 22, 2019) (finding that certain attorneys' fees incurred while seeking restitution were excessive); *United States v. Napout*, 15-CR-252 (PKC), 2018 WL 6106702, at *9 (E.D.N.Y. Nov. 20, 2018) (same). To the contrary, Sullivan & Cromwell's restitution recovery work for MSD was quite limited: After Afriyie's conviction, a Sullivan & Cromwell attorney "[r]esearch[ed] procedures for seeking criminal restitution from forfeited funds," App'x at 54 n.19, 156; and the firm prepared a letter to the USAO requesting restitution for MSD, App'x at 54. The firm then prepared and submitted to the district court just before the

33

restitution hearing a short letter to the same effect. The district court acted within its discretion in allowing MSD to recover for these expenses.

## CONCLUSION

For the reasons above, we affirm in part and vacate in part the district court's amended restitution order, and we remand for further proceedings consistent with this opinion.